PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| SAFAA AL-ZERJAWI, | ) | |
| | ) | CASE NO. 5:16CV2743 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| JAMES KLINE, D.O., *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** |

*Pro se* Plaintiff Safaa Al-Zerjawi, an Ohio prisoner incarcerated in the Trumbull Correctional Institution ("TCI"), filed this *in forma pauperis* civil rights action pursuant to 42 U.S.C. § 1983 against Dr. James Kline; TCI Nurses Zaborski, Gizzy, and Lane; Unit Manager Mr. Lowry; TCI Health Services Administrator G. Lewis; Institutional Inspector Ms. Frederick; and the Medical Director of the Ohio Department of Rehabilitation and Correction ("ODRC"), Dr. Andrew Eddy. His Complaint alleges deliberate indifference in violation of the Eighth Amendment in connection with medical care he has received at TCI for lower back pain. ECF No. 1.[1] For the reasons stated below, the Court dismisses the action.

---

[1] Plaintiff filed a prior action in this Court alleging deliberate indifference in connection with other alleged medical needs he has had while incarcerated at TCI. *See Al-Zerjawi v. James Kline, D.O., et al.*, No. 4:15CV2512. That action is was referred to Magistrate Judge Kathleen B. Burke for pretrial supervision (ECF No. 20), and is currently pending before her.

(4:16CV2743)

## I.  Background

Plaintiff states that he "twisted" his lower back while lifting a laundry bag in August 2015, exacerbating a prior back condition and causing him to fall to the floor.  *Id.* at PageID #: 5. His cell-mate informed the Correctional Officers of his situation, but they did not come to his cell "to investigate."  *Id*.  Plaintiff then "climbed down the stairs with great difficulty" to tell the Correctional Officers that he needed medical attention, but was told to fill out a standard medical request form.  *Id*.  Unit Manager Lowry allegedly told the Officers "not to call medical unless [Plaintiff] was dying."  *Id.*

Plaintiff filled out a standard medical request form and was called to be seen in Medical about three weeks later, on September 2, 2015.  He contends that Nurse Zaborski refused to see him on this visit, but instead took another inmate ahead of him and allegedly made a prejudicial remark about his ethnicity (Arab) and religion (Muslim).  *Id.* at PageID #: 6.  He was, however, seen by Nurse Lane and healthcare administrator Ms. Lewis, who both told him there was nothing they could do for him and that he would seen by Dr. Kline on his next chronic care visit. *Id*.  He was sent back to his cell block.

Plaintiff's cell-mate would push the emergency button in their cell to get help from the Correctional Officers whenever Plaintiff experienced pain and an inability to move.  *Id*.  He alleges this happened often after September 2, 2015.  *Id*.  The Correctional Officers would then inform Medical that he was experiencing pain.  Plaintiff maintains that, on at least three occasions, Nurse Gizzy told Plaintiff he would not be seen in Medical and that he should  "go to

(4:16CV2743)

sleep." *Id*. After he filed an informal complaint, he was told he would be seen by Dr. Kline on September 17, 2015. *Id*.

Dr. Kline evaluated Plaintiff on September 17, 2015, and on multiple occasions thereafter. Dr. Kline ordered various tests for Plaintiff, including an EMG and an MRI. *Id*. at PageID #: 7. On December 10, 2015, Dr. Kline informed Plaintiff that his the MRI revealed "nothing," "just a bulging disc at L3-L4, some scar tissue at L4-L5 and some arthritis." *Id*. Dr. Kline nevertheless told Plaintiff he would refer him to a specialist.[2] Plaintiff met with the specialist on January 15, 2016. *Id*. According to Plaintiff, the specialist told him that he had nerve damage and that "at this point, [he] should have physical therapy to try to decrease [his] pain and strengthen [his] back and legs as much as possible and try to prevent further damage." *Id*. He alleges the specialist also "ordered a CT scan with contrast and told [Plaintiff he] needed to see a neurologist 'in person' for a proper examination and evaluation." *Id*. at PageID #: 8.

After several requests to Dr. Kline, Ms. Lewis, and Nurse Practitioner Metzler, TCI medical staff provided Plaintiff with a CT scan, as well as physical therapy. *Id*. After receiving a report of the CT scan results, which Plaintiff alleges revealed "significant damage to his discs and degeneration at multiple levels," Dr. Kline informed him there was nothing more Medical could do for him. *Id*.

Plaintiff nonetheless demanded that he again be seen by a specialist, and Dr. Kline "relented." *Id*. Plaintiff was seen by "a different specialist, a neurologist," through a video

---

[2] Plaintiff does not know the name of the specialist, and cannot read the specialist's name on his medical chart. *Id*.

3

(4:16CV2743)

consultation, who allegedly told him "he had nerve damage and ordered medication to help control [his] pain." *Id.* at PageID #: 9. He alleges this specialist also told him he needed to see a neurologist in person and ordered "a lumbar flexion series of X-rays." *Id.*

Although Plaintiff was subsequently seen for, and provided with additional treatments to ameliorate the effects of his nerve damage and pain in his legs and back, including being referred to a foot doctor and provided braces and supportive shoes, Dr. Eddy denied him an additional visit to a neurologist, as well as the pain medication he wants, Neurontin. *Id.* at PageID #: 9–10. Plaintiff acknowledges that ODRC no longer prescribes Neurontin due to its potential to be addictive, but he asserts it has been prescribed for him in the past and contends at least two other inmates are receiving it. *Id.* at PageID #: 10–11. He also alleges Dr. Kline denied and cancelled an additional "nerve conduction test" because Dr. Kline believed it "would not show us more than we know now." *Id.* at PageID #: 10.

Plaintiff contends that prison employees and medical staff have been deliberately indifferent to his medical needs. He maintains that the treatment he has been provided is "inadequate" and that he has not been provided any other treatment or further "consultation with any specialist, neurologist, or surgeon to determine the appropriate treatment for [his] severe and progressively disabling condition." *See id.* at PageID #: 11–12. He also joins Institutional Inspector Frederick as a defendant, alleging that she did not timely respond to his grievances regarding his condition. *Id.* at PageID#: 10.

Plaintiff seeks compensation for his "ongoing suffering, pain, and progressive nerve damage," as well as an order "mandat[ing] that [his] current doctor, Dr. Kline, and the other

4

(4:16CV2743)

Defendants from the Ohio Department of Rehabilitation and Correction provide [him] with the care that [he] require[s]," including "surgery and any other required intervention so that [his] pain, nerve damage and dysfunction can be corrected as much as possible." *Id.* at PageID #: 12. He also requests an order requiring "an independent assessment of the permanent damage . . . to [his] lower back." *Id.*

## II.  Standard of Review

Although federal courts are obligated to construe *pro se* complaints liberally, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), principles requiring generous construction of *pro se* pleadings are not without limits. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *Young Bok Song v. Gipson*, 423 F. App'x 506, 509–10 (6th Cir. 2011). Under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, federal district courts are expressly required to screen all *in forma pauperis* actions and prisoner actions seeking redress from governmental defendants, and to dismiss before service any such action that the court determines is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

To avoid a dismissal for failure to state a claim, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (holding that the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) governs dismissals for failure to state a claim under §§ 1915(e)(2)(B) and 1915A). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

5

(4:16CV2743)

misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint may also be dismissed if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990). The action has no arguable basis in law if a defendant is immune from suit or if a plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327.

### III. Discussion

Upon review, the Court finds the Plaintiff's Complaint must be dismissed for failure to state a plausible claim of deliberate indifference under the Eighth Amendment on which relief may be granted.

Failure to provide adequate medical treatment to a prisoner constitutes a violation of the Eighth Amendment's prohibition against cruel and unusual punishment only when it can be said to result from "deliberate indifference" to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim, a prisoner must show that he has a serious medical need or condition, and that the prison officials or staff members in question acted with deliberate indifference to it. *Mitchell v. Hininger*, 553 F. App'x 602, 604 (6th Cir. 2014).

Deliberate indifference requires "more than mere negligence, more even than medical malpractice." *Id.* (citing *Estelle*, 429 U.S. at 106). "It requires something akin to criminal recklessness: The defendant must 'know [ ] that inmates face a substantial risk of serious harm and disregard[ ] that risk by failing to take reasonable measures to abate it.'" *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). Furthermore, when a prisoner has received some treatment for his condition, in order to state a claim, he must show that the treatment he received

6

(4:16CV2743)

was "so woefully inadequate as to amount to no treatment at all." *Id.*; *see also Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)* ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").

It cannot be said that the care Plaintiff has been provided for his alleged condition was so woefully inadequate as to amount to no treatment at all. His Complaint plainly indicates he was seen in Medical for complaints about his leg and back pain on a number of occasions, and that steps were taken to diagnose and treat his condition. He had an MRI, a CT scan, and was seen by specialists who assessed his condition as permanent nerve damage. He was provided physical therapy as suggested by the first specialist, and was referred to a foot doctor in Columbus and provided braces and supportive shoes.

Plaintiff complains he is still in pain and believes more or better treatment is available to him—for example, he asks the Court for an order requiring "surgery and any other required intervention so that [his] pain, nerve damage and dysfunction can be corrected as much as possible." ECF No. 1 at PageID #: 12. Plaintiff's Complaint, however, indicates that Dr. Kline does not believe additional diagnostic measures would reveal anything about Plaintiff's condition not already known, or that more or different treatment is appropriate based on what is known. It is well-established that a prisoner's disagreement with the level of testing or treatment he receives does not rise to the level of a constitutional violation. *See Dodson v. Wilkinson*, 304 F. App'x 434, 440 (6th Cir. 2008); *Ward v. Smith*, 100 F.3d 958, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996) ("[D]ifferences in judgment between an inmate and prison medical personnel

7

(4:16CV2743)

regarding the appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim").

Accordingly, the Court does not find Plaintiff's allegations regarding the care he has received for his alleged chronic back and leg pain sufficient to suggest a plausible claim that TCI officials and medical staff have been "deliberately indifferent" within the meaning of the Eighth Amendment. Furthermore, Plaintiff has not alleged a plausible claim against Institutional Inspector Frederick for the additional reason that liability for constitutional deprivations may not be imposed on a supervisory official solely because the official denied an administrative grievance. *Shedden v. United States*, 101 F. App'x 114, 115 (6th Cir. 2004) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999)).

### IV. Conclusion

For the reasons stated above, Plaintiff's Complaint is dismissed pursuant to 28 U.S.C. §§1915(e) and 1915A. The Court further certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

 April 20, 2017  /s/ Benita Y. Pearson
Date  Benita Y. Pearson
 United States District Judge